UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

A.R.B. a minor, by SABRINA BRINK,

                Plaintiff,            1:16-CV-0577
                                                     (GTS/WBC)

v.

COMMISSIONER OF SOCIAL SECURITY

                Defendant.
_____

APPEARANCES:                                            OF COUNSEL:

LAW OFFICE OF PETER MARGOLIUS        PETER MARGOLIUS, ESQ.
  Counsel for Plaintiff
7 Howard St.
Catskill, NY 12414

U.S. SOCIAL SECURITY ADMIN.             REBECCA H. ESTELLE, ESQ.
OFFICE OF REG'L GEN. COUNSEL-REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 12)

      Currently before the Court, in this Social Security action filed by Sabrina Brink ("Plaintiff") on behalf of her minor daughter, A.R.B. ("Claimant") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42

U.S.C. § 405(g), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, it is ordered that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

At the time of filing Claimant was a school aged child and at the time of her hearing Claimant was an adolescent. (T. 15); 20 C.F.R. § 416.926a(g)(2). Claimant's alleged disability consists of mood disorder. (T. 148.)

### B. Procedural History

On March 14, 2013, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on Claimant's behalf. (T. 121.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On July 30, 3014, Plaintiff and Claimant appeared before the ALJ, Robert Wright. (T. 43-63.) On November 12, 2014, ALJ Wright issued a written decision finding Claimant not disabled under the Social Security Act. (T. 9-30.) On March 24, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Claimant was a "school aged child" at the time of filing and an "adolescent" the time of the hearing pursuant to 20 C.F.R. § 416.926a(g)(2). (T. 15.) Second, the ALJ found that Claimant had not engaged in

2

substantial gainful activity since the application date. (*Id.*) Third, the ALJ found that Claimant suffered from the severe impairment of a mood disorder not otherwise specified. (*Id.*) Fourth, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I ("the Listings"). (*Id.*) Fifth, the ALJ found that Claimant did not have an impairment or combination of impairments that functionally equaled an impairment set forth in the Listings. (T. 16-26.) Sixth, and finally, the ALJ concluded Claimant had not been disabled, as defined by the Social Security Act, since March 14, 2013, the date her application was filed. (T. 26.)

## II.     THE PARTIES' BRIEFINGS

### A.     Plaintiff's Arguments

Generally, in support of her motion for judgment on the pleadings, Plaintiff makes two arguments. First, Plaintiff argues the ALJ's determination, that Claimant had less than a marked limitation in the domain of acquiring and using information, is not supported by substantial evidence. (Dkt. No. 9 at 2-3 [Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues the ALJ's determination that Claimant had less than marked limitations in the domain of interacting and relating with others, is not supported by substantial evidence. (*Id.* at 3-4.)

### B.     Defendant's Argument

Generally, in support of her cross-motion for judgment on the pleadings, Defendant makes one argument. Defendant argues substantial evidence supports the ALJ's finding that Claimant had a less than marked limitations in the domains of

acquiring and using information, and interacting and relating with others. (Dkt. No. 10 at 8-12 [Def.'s Mem. of Law].)

## III. RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. *See* 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, No. 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. *See* 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. *See* 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working." *Zebley v. Sullivan*, 493 U.S. 521, 529, 110 S. Ct. 885, 890 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). *Id.* Equivalence to a listing can be either medical or functional. *See* 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the child will be deemed disabled. *See* 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a child functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being. *See id.*

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

**IV. ANALYSIS**

In terms of the six functional equivalence domains, the ALJ found that Claimant had a "less than marked" limitation in the domains of: acquiring and using information; attending and completing tasks; interacting and relating with others; and caring for herself. (T. 19-26.) The ALJ found that Claimant had no limitation in the domains of: moving about and manipulating objects, and health and physical well-being. (*Id.*)

    **i.)    The Domain of Acquiring and Using Information**

In this domain, the ALJ considers how well Claimant acquires or learns information, and how well Claimant uses the information she has learned. 20 C.F.R. § 416.926a(g); SSR 09-3p. A school-aged child, like Claimant at the time of filing, should be able to learn to read, write, and do math, and discuss history and science. 20 C.F.R. § 416.926a(g )(iv). A school aged child needs to use these skills in academic situations to demonstrate what she has learned and should also use these skills in daily living situations at home and in the community. *Id.* A school aged child should be able to use increasingly complex language to share information and ideas with individuals or groups, by asking questions and expressing her ideas, and by understanding and responding to the opinions of others. *Id.* An adolescent, like Claimant at the time of the hearing, should be able to use what she has learned in daily living situations without assistance, comprehend and express both simple and complex ideas, and should learn to apply these skills in practical ways that will help her enter the workplace after she finishes school. 20 C.F.R. § 416.926a(g)(v); SSR 09-3p.

The ALJ determined that Claimant had a less than marked limitation in the domain of acquiring and using information. (T. 19-20.) In making his determination the ALJ acknowledged Claimant's poor grades, but took into consideration the impact of

8

poor attendance, behavioral problems, and lack of effort. (T. 20.) The ALJ also acknowledged Claimant's significantly below average standardized testing scores; however, he again took into consideration the impact of Claimant's poor attendance. (*Id.*) The ALJ further relied on the medical opinion evidence provided by consultative examiner, Seth Rigberg, Ph.D., non-examining State agency consultant, M. Marks, Psychology, and a teacher questionnaire. (*Id.*)

In May of 2013, Claimant's sixth grade English teacher, Cheryl Hedges, completed a teacher questionnaire. (T. 155-162.) Ms. Hedges indicated that Claimant read and wrote at a fifth grade level. (T. 155.) She indicated that Claimant had "a very serious problem" in all areas of acquiring and using information. (T. 156.) She wrote that Claimant did not "read to acquire information," guessed at answers, did not ask for help, and rushed through work to be finished. (*Id.*) Ms. Hedges noted that Claimant missed school, but she was unaware if it was due to illness or truancy. (T. 161.) For the academic year 2012-2013, school records indicated that Claimant was absent (excused and unexcused) from school nineteen times. (T. 165.) Claimant was late (excused and unexcused) sixty times. (T. 165-166.)

An Individualized Education Program ("IEP") was implemented for Claimant's eighth grade, academic year 2014-2015. (T. 417-424.) Testing completed while Claimant was in seventh grade, academic year 2013-2014, indicated that her math computation was at a 6.5 grade level, her sentence comprehension was at a 5.3 grade level, and her word reading was at a 5.4 grade level. (T. 417.) In the area of English language arts ("ELA") it was noted that Claimant was often absent to class, forgot to hand in work, did not bring appropriate work to class, and displayed avoidance

9

behavior. (T. 418.) In the area of mathematics, it was noted Claimant struggled with "all computations skills," word problems, and common core curriculum. (*Id.*) Claimant was able to multiply and divide, but struggled with multiplying two or more digits. (*Id.*) Claimant could do a basic single algebraic problem, but became "confused" when asked to perform more than one step. (*Id.*)

On May 29, 2013, Dr. Rigberg performed a child psychiatric evaluation. (T. 402-405.) He opined, in part, that Claimant had no limitation attending to, following, and understanding age appropriate directions and no limitation completing age appropriate tasks. (T. 404.) Non-examining State agency medical consultant, Dr. Marks, reviewed the record on June 17, 2013. (T. 69.) Dr. Marks opined that Claimant had no limitation in the domain of acquiring and using information. (T. 68.)

Plaintiff argues that the ALJ's determination, that Claimant had a less than marked limitation in the domain of acquiring and using information, is not supported by substantial evidence in the record. (Dkt. No. 9 at 3-4 [Pl.'s Mem. of Law].) Plaintiff argues Claimant had an extreme limitation in this domain because test scores indicated Claimant, who was in the seventh grade at the time, read at a third grade level. (*Id.* at 3.)[1]

To be sure, the Regulations state that a claimant has an "extreme" limitation in a domain when a valid score is three standard deviations or more below the mean on a comprehensive standardized test *and* claimant's day-to-day functioning in domain-related activities is consistent with that score. 20 C.F.R. § 416.926a(e)(3)(i). However,

---

[1] Plaintiff alleges that Claimant was in the eighth grade when tested; however, although the IEP was for her eighth grade school year (2014-2015) testing was done while Claimant was in the seventh grade (May 2014). (T. 418.)

under the Regulations, a test score alone is not dispositive of an extreme limitation. *Id.* at § 416.926a(e)(4)(i) (an ALJ "will not rely on any test score alone[,] [n]o single piece of information taken in isolation can establish whether you have a marked or an extreme limitation in a domain"); *see Miles ex rel. J.M. v. Astrue*, 502 F. App'x 59, 61 (2d Cir. 2012) ("the existence of one test score does not entitle a claimant to a finding of disability as a matter of law").

Here, although Claimant had test scores that may support a finding of an extreme limitation in this domain, the ALJ's determination that Claimant had a less than marked limitation in the domain is supported by substantial evidence in the record. The record contains a wide arch concerning Claimant's ability in this domain and the ALJ properly relied on the record as a whole, including test scores, in determining that Claimant had a less than marked limitation. (T. 19-20.)

The ALJ resolved conflicting evidence in the record in making his determination. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). It is clear from the ALJ's decision that he took into consideration the test scores, Ms. Hedges's non-medical opinion, and the medical opinions of the consultative examiners in making his determination. (T. 19-20.) The ALJ afforded the opinions of Drs. Rigberg and Marks "great weight" and the opinion of Ms. Hedges "significant weight." (T. 17-18.) Although the consultative examiners opined that Claimant had no limitation in the domain of acquiring and using information the ALJ nonetheless determined that Claimant had a degree of; however, the ALJ

rejected the evidence supporting a marked, or extreme, limitation.  The record as a whole supports the ALJ's determination that Claimant had a less than marked limitation in this domain because other opinion evidence in the record indicated that Claimant could follow, understand, and complete age directions and tasks.

Therefore, the ALJ thoroughly discussed the evidence in the record, resolved conflicts in the record, and provided reasoning for not adopting greater limitations.  The ALJ's determination that Claimant had less than marked limitation in the domain, despite test scores, is supported by substantial evidence in the record and is upheld.  *See Pough ex rel. K.P. v. Comm'r of Soc. Sec.*, No. 1:10-CV-1547, 2012 WL 4490892, at *4 (N.D.N.Y. Sept. 28, 2012) (despite test scores, the ALJ's determination was supported by teacher and doctor evaluations which discussed claimant's functional limitations in the relevant domains).

### ii.)   The Domain of Interacting and Relating to Others

In this domain the ALJ will consider how well Claimant is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possession of others.  20 C.F.R. § 416.926a(i); SSR 09-5p.

A school aged child should be developing more lasting friendships with children who are of the same age, begin to understand how to work in groups to create projects and solve problems, have an increasing ability to understand another's point of view and to tolerate differences.  20 C.F.R. § 416.926a(i)(2)(iv); SSR 09-5p.  A school aged child should attach to adults other than parents, talk to people of all ages, share ideas,

tell stories, and speak in a manner that both familiar and unfamiliar listeners readily understand.  20 C.F.R. § 416.926a(i)(2)(iv); SSR 09-5p.

An adolescent should be able to initiate and develop friendships with children of the same age and relate appropriately to other children and adults, focus less attention on parents and more on relationships with peers, and develop an increasing desire for privacy.  20 C.F.R. § 416.926a(i)(2)(v); SSR 09-5p.  An adolescent should be increasingly able to solve conflicts with peers, family members or adults, recognize that there are different social rules for dealing with her friends and acquaintances than with adults, able to intelligibly express her feelings, ask for assistance, seek information, describe events, and tell stories.  20 C.F.R. § 416.926a(i)(2)(iv); SSR 09-5p.

The ALJ determined that Claimant had a less than marked limitation in the domain of interacting and relating to others.  (T. 22-23.)  In making this determination the ALJ acknowledged Claimant's "well-documented" behavioral problems with her family; however, the ALJ ultimately relied on the medical opinions of Drs. Rigberg and Marks and the opinion of Ms. Hedges.  (T. 23.)

Dr. Rigberg opined that Claimant had "no limitation to marked limitation adequately maintaining appropriate social behavior depending on the circumstances."  (T. 404.)  Dr. Marks opined that Claimant had a less than marked limitation in this domain.  (T. 68.)  Dr. Marks took into consideration Claimant's history of significant difficulty getting along with siblings, her aggressive behavior when angry, and noted irritability; however, he also took into consideration Dr. Rigberg's exam in which he described Claimant as cooperative with age appropriate social skills and Claimant self-

report that she had friends.  (*Id.*)  Ms. Hedges opined that Claimant had no problems in this domain.  (T. 158.)

Plaintiff argues that the ALJ's determination, that Claimant had less than marked limitations in the domain of interacting and relating with others, is not supported by substantial evidence in the record.  (Dkt. No. 9 at 3-4 [Pl.'s Mem. of Law].)  Plaintiff argues that evidence in the record supports a finding of marked limitation in this domain. (*Id.*)  Plaintiff relies on Claimant's 2014-2015 EIP report, emergency room visits, GAF scores, mental health treatment notations, and Dr. Rigberg's opinion.  (*Id.*)

As acknowledged by the ALJ, there were "significant" differences of opinion on the issue of Claimant's ability to interact and relate with others.  (T. 23.)  Indeed, on two occasions Claimant was hospitalized for threatening to harm herself and her family.  (T. 302, 337.)  However, during her hospitalization, providers described her as cooperative. (T. 304, 311.)  Robert Alessi, M.D. noted that during Claimant's 2011 hospitalization she was able to maintain a roommate, manage boundaries, and had appropriate interactions.  (T. 303.)  During her 2012 hospitalization, Dr. Alessi again described Claimant as cooperative.  (T. 337.)  Dr. Alessi noted Claimant identified her desire to control her strong emotions and she was able to identify stress triggers such as a chaotic home life.  (*Id.*)  Dr. Alessi indicated that Claimant was able to stay in a double occupancy room and maintain age appropriate boundaries and interactions.  (*Id.*) Mental health providers reported Claimant had significant difficulty with her siblings. (*See ex.* T. 380-381.)  However, the record also indicated that Claimant maintained a strong relationship with her grandmother and had friends in her grandmother's community.  (T. 386.)

Claimant's IEP noted that she reported she went out with peers on the weekends and during special events. (T. 418.) Claimant's IEP noted she struggled with social interactions with peers and adults, described her as "immature," and as having "inappropriate" interactions with peers one to two times a week. (T. 419.) Claimant's IEP indicated that she struggled taking directions and corrections from adults. (*Id.*) However, the IEP also reported that Claimant worked well in small groups and "got along" with her resource room peers. (*Id.*) The IEP noted that Claimant was kind and appropriate with her resource room peers. (*Id.*)

Overall, there is evidence in the record which could support Plaintiff's assertion that Claimant had greater limitation in this domain. However, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).

Here, the ALJ acknowledged that the record contained opinion evidence and observations that supported significant behavioral problems. However, the ALJ determined that the evidence, as a whole, indicated Claimant had less than marked limitation in this area. (T. 23.) The ALJ's determination is supported by the opinion evidence provided by Drs. Rigberg and Mark, the opinion of Ms. Hedges, and Claimant's school records. Because the ALJ's determination is supported by substantial evidence in the record it must be upheld.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

 **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is

 **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is

 **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.


Dated:  May 10, 2017            /s/ Bill Carter
                        William B. Mitchell Carter
                        U.S. Magistrate Judge